**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
**GENERALI ESPAÑA DE SEGUROS Y**
**REASEGUROS, S.A.,**

<table>
<tr><td></td><td style="text-align:center">Petitioner,</td><td style="text-align:center"><b>MEMORANDUM<br><u>AND ORDER</u></b></td></tr>
<tr><td style="text-align:center">-against-</td><td></td><td style="text-align:center"><b>21-CV-4080 (RLM)</b></td></tr>
</table>

**SPEEDIER SHIPPING, INC.,**

                                        **Respondent.**
------------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Currently before this Court, on consent to proceed before the undersigned magistrate

judge, is a petition filed by Generali España de Seguros y Reaseguros, S.A. ("petitioner" or

"Generali España") to enforce two foreign arbitration awards (the "Arbitration Awards")

issued in London, England, in favor of petitioner's insured—Marítima Bizcaina, S.A.

("Mabisa")—and against respondent Speedier Shipping, Inc. ("respondent" or "Speedier").

See generally Petition re: Arbitration Award (July 20, 2021) ("Petition"), Electronic Case

Filing ("ECF") Docket Entry ("DE") #1; Memorandum of Law in Support of Petition (July

20, 2021) ("Pet. Mem."), DE #1-2; Consent to Jurisdiction by US Magistrate Judge (Feb. 1,

2022), DE #20.[1]  Speedier opposes the Petition primarily on the grounds that Speedier

purportedly was not a party to, nor did it sign, the shipping agreement that gave rise to the

underlying dispute and Arbitration Awards, which petitioner now seeks to enforce.  See

---

[1] On May 5, 2021, after entering bankruptcy proceedings, Mabisa assigned the Arbitration Awards issued in its favor to its insurer, Generali España.  See Petition ¶¶ 35-36; see also Assignment of Arbitration Awards dated May 5, 2021 (docketed on Feb. 6, 2022) at 1-2, DE #26-5.

Respondent Answer to Petition (Jan. 1, 2022) ("Answer") ¶¶ 2-5, DE #13.  For the forthcoming reasons, Generali España's Petition is granted.

## BACKGROUND

Petitioner Generali España is a Spanish insurance company and the insurer of Mabisa, a Spanish logistics company.  See Petition ¶¶ 4, 12, 15.  Respondent Speedier is a freight forwarder, with its principal place of business located in Jamaica, New York.  See id. ¶¶ 5, 8; Answer ¶ 1.  Wasa Projects & Logistics Ltd. ("Wasa")—another party to the arbitration proceedings—is a shipping solutions company based in Brazil.  See Petition ¶ 12.  The underlying dispute in this matter arose out of a shipping agreement involving the aforementioned companies for the transportation of an industrial transformer from Brazil to Nicaragua, by way of Panama.[2]  See id. ¶¶ 10-12.

### A.    Factual Background

In August 2014, petitioner's insured, Mabisa, entered into a contract with the transformer supplier TSK Electrónica y Electricidad, S.A. ("TSK") to transport an industrial transformer to La Virgen, Nicaragua.  See id. ¶¶ 11-12.  Mabisa subcontracted the entirety of the transformer's transportation to Wasa and Speedier, to be performed jointly.  See Pet. Mem. at 1, DE #1-2.  The terms of Mabisa's subcontract agreement with Wasa and Speedier were set forth in a booking note, dated August 18, 2014 (the "Booking Note").  See Petition ¶ 13; see generally BIMCO Liner Booking Note dated Aug. 18, 2014 (docketed on July 20,

---

[2] "The first leg of the transport[, from Brazil to Panama,] was to be conducted by sea and, once the cargo was unloaded in Manzanillo, Panama, [the transformer] w[as to] be loaded on a truck and transported by road to its final destination [in Nicaragua]."  Pet. Mem. at 1, DE #1-2.

2021) ("Booking Note"), DE #4-3.[3]  The Booking Note includes an arbitration clause (the

"Arbitration Clause"), which provides, in relevant part, that the agreement:

> shall be governed by and construed, to the exclusion of any other law and place
> of jurisdiction, in accordance with English law and *any dispute arising out of or*
> *in connection with this contract or concerning the validity of this arbitration*
> *clause shall be referred to arbitration in London*. The arbitration shall be
> commenced and conducted in accordance with the Arbitration Act 1996 . . . and
> . . . the London Maritime Arbitrators Association's (LMAA) Terms[.]

Booking Note ¶ 36, DE #4-3 (emphasis added).  The Booking Note was signed by

Mabisa as the "Merchant," and by Wasa under the signature line specifying "Speedier

Shipping Inc. USA" as the "Carrier."  See id. at DE #4-3 p. 8.

In September 2014, the transformer was damaged during the overland portion of its

transit from Panama to Nicaragua, when the truck carrying the transformer struck a bridge.

See Petition ¶ 11; Pet. Mem. at 1, DE #1-2.  Thereafter, TSK initiated legal proceedings

against Mabisa in the Spanish court system to recover for the damage to the transformer under

the original contract between itself and Mabisa.  See Petition ¶ 15.  TSK's claim against

Mabisa was eventually settled "in the course of proceedings before a Court in Spain upon

payment by [Generali España], Mabisa's insurer[], to TSK [in the amount] of € 545,000.00."

Liability Award ¶ 2, DE #4-1.  Subsequently, Mabisa and Generali España attempted to

amicably recover, from Wasa and Speedier, the monetary damages that Generali España paid

to TSK (on behalf of Mabisa), but these out-of-court negotiations were unsuccessful.  See

Petition ¶ 16.

---

[3] In turn, Wasa engaged a road hauling company, Constructora Hugo Hutchinson S.A., to perform the overland portion of the transit.  See Arbitration Award dated Oct. 25, 2018 (docketed on July 20, 2021) ("Liability Award") ¶¶ 3, 10, 37, DE #4-1.

3

On November 15, 2016, after negotiations had failed, Generali España and Mabisa commenced arbitration proceedings against Wasa and Speedier, asserting claims for breach of contract and/or breach of duty and/or negligence, see id. ¶ 18; on the same day, a notice was sent to Wasa and Speedier, advising them of the arbitration, as well as the finality of the arbitrators' decision, see Notice of Commencement of Arbitration (docketed on July 20, 2021) ("Arbitration Notice") DE #4-5 at 2-3.  On January 19, 2017, the matter was submitted to a two-person arbitral tribunal (the "Tribunal"), pursuant to the rules of the LMAA.[4]  See Petition ¶¶ 19-21.  In their arbitration papers, Generali España and Mabisa asserted that Wasa and/or Speedier were liable to indemnify them with respect to "the sum paid in settlement of TSK's claim, and associated costs, by reason of [Wasa and/or Speedier's] failure safely to carry and deliver the transformer[.]"  Liability Award ¶ 6, DE #4-1.  In response, Wasa and Speedier argued that, under the Booking Note, they were not liable for on-carriage transportation beyond the "port of discharge" in Panama and, alternatively, that no party was at fault because the damage to the transformer was due to an "inevitable and unforeseeable circumstance."  Id. ¶ 7.  In connection with the liability phase of the proceedings, Wasa and Speedier also contested the amount of damages sought by Generali España and Mabisa.  See id. ¶¶ 42, 44.  After considering all of the parties' submissions, the Tribunal issued two separate awards—one regarding liability and one regarding cost allocation—in favor of petitioner's insured, Mabisa, and against Wasa and Speedier.

---

[4] According to the Liability Award issued on October 25, 2018, Mabisa and Generali España appointed the first arbitrator, Ian Kinnell, while Wasa and Speedier appointed the second arbitrator, Christopher Moss.  See Liability Award ¶ 5, DE #4-1.

i.    *The Arbitration Awards*

The first arbitration award, pertaining to liability (the "Liability Award"), was issued on October 25, 2018.  See Liability Award at p. 25, DE #4-1; see also Petition ¶¶ 2, 22-24. As an initial matter, the Tribunal determined, based on correspondence from 2017, that "all steps taken in the arbitration on behalf of [Wasa and Speedier] were steps taken on behalf of Speedier as well as Wasa[.]"  Liability Award ¶ 16, DE #4-1.  In addition, while agreeing among themselves that Wasa would handle their defense and be financially responsible for any adverse outcomes and costs, see id., both Wasa and Speedier had expressly "accepted joint and several responsibility for the performance of the Booking Note contract[,]" id. ¶ 35.  The Tribunal further determined that the Booking Note constituted an "all-embracing contract" for the transportation of the transformer from Brazil to Nicaragua, "with Wasa and/or Speedier accepting responsibility for all of its stages[,]" including the overland portion of transit during which the transformer sustained damage.  Id. ¶¶ 30, 32-33.  Ultimately, the Tribunal concluded that Wasa and Speedier are jointly and severally liable to Mabisa for the damage to the transformer because they breached the Booking Note by failing to take due care in transporting said transformer.  See id. ¶ 37.  As a result, the Liability Award ordered Wasa and Speedier, jointly and severally, to pay Mabisa €545,000.00 in damages and €16,815.00 in costs, plus interest at the rate of 4.5 percent per annum.  See id. ¶ 45(b)-(d).

On March 1, 2019, before issuing the second award, concerning costs, the Tribunal received an email from Speedier's New York counsel (Mr. Glenn H. Ripa, Esq.), requesting that the Liability Award be vacated, on the grounds that Speedier had not been involved in the underlying shipping transaction and that Wasa and its counsel had failed to adequately

5

represent Speedier's interests during in the arbitration proceedings.  See Further Arbitration Award – Assessment of Costs dated Oct. 8, 2019 (docketed on July 20, 2021) ("Costs Award") ¶ 4, DE #4-2; see also Speedier Email dated Mar. 1, 2019 (docketed on Feb. 6, 2022) ("Speedier 3/1/19 Email"), DE #26-7.  The Tribunal informed Mr. Ripa, and held in its award addressing costs, that at that stage of the proceeding, its jurisdiction pertained only to the allocation of costs and that, therefore, Speedier's untimely objections/concerns would not be entertained.  See Costs Award ¶ 4, DE #4-2.

More than six months later, having received no further submissions related to costs from Wasa or Speedier, the Tribunal issued its second award on October 8, 2019, evaluating and allocating Mabisa's purported costs (the "Costs Award").  See id. ¶¶ 4-7.  Therein, the Tribunal determined that Mabisa's recoverable costs, including attorneys' fees and disbursements, are £83,904.58, and that Wasa and Speedier are jointly and severally liable for payment of these costs.  See id. ¶ 25(a)-(b).  The Tribunal also awarded Mabisa 4.5 percent per annum interest on this amount.  See id. ¶ 25(c).

Speedier has yet to pay any portion of the amounts due and owing under the Arbitration Awards.  See Petition ¶ 32.

### B. Procedural Background

On July 20, 2021, Generali España timely filed its Petition in this Court, seeking to enforce the two foreign Arbitration Awards issued against Speedier in London, England, pursuant to Section 207 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 207, and Article III of the United Nations Convention on the Recognition and Enforcement of Foreign

Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 [hereinafter "New York Convention"].  See generally Petition; Pet. Mem., DE #1-2.

After initially failing to timely respond, Speedier filed its answer to the Petition (the "Answer") on January 1, 2022, with leave of the Court.  See generally Answer; Order (Dec. 21, 2021).  In its Answer, Speedier resists enforcement of the Arbitration Awards, arguing that the Booking Note containing the Arbitration Clause is invalid because Speedier was not a party to the underlying transaction for the shipment of the transformer and that Wasa signed the Booking Note on Speedier's behalf without its consent.  See Answer ¶¶ 2-4.  Speedier further argues that enforcement is improper because it never agreed to and did not participate in the arbitration proceedings that resulted in the Arbitration Awards issued against it.  See id. ¶¶ 3-4.

On January 6, 2022, this Court held a combined initial/premotion conference hearing, during which the parties were instructed to brief "the issue of whether, in the absence of an arbitration agreement signed by [respondent], an arbitration award can be enforced against [respondent] under the circumstances of the case."  Minute Entry (Jan. 6, 2022), DE #16.

On February 6, 2022, Generali España filed its brief addressing that issue.  See generally Generali España's Brief in Further Support (Feb. 6, 2022) ("Generali España Brief"), DE #25.  Specifically, Generali España argues that the issue concerning the signing of the Booking Note had been resolved by the Tribunal, which found that Speedier was a party to both the underlying transaction and the arbitration proceedings.  See id. at 10-12.  Generali España further argues that Speedier has produced no evidence to establish the invalidity of the Booking Note and that neither Speedier, nor Wasa on its behalf, had challenged the validity of

7

the Booking Note (or its Arbitration Clause) during the arbitration, thereby waiving the defense.  See id. at 14-19.

On March 4, 2022, Speedier filed its opposition brief, in which it advances essentially the same arguments made in its Answer to the Petition, including that Generali España cannot produce the requisite signed copy of an original agreement to arbitrate because Speedier never signed the Booking Note containing the relevant arbitration provision.  See generally Speedier's Memorandum in Opposition to Petitioner's Brief (Mar. 4, 2022) ("Speedier Opp."), DE #28-1.

Two weeks later, Generali España filed a reply, urging the Court to grant its Petition because it has satisfied the requirements under the New York Convention and because Speedier failed to demonstrate that the Booking Note and Arbitration Clause therein are invalid.[5]  See Generali España's Reply in Support of Petition (Mar. 18, 2022) ("Reply") at 2-7, DE #29.

## DISCUSSION

## I.   Applicable Legal Standard

A district court's "[r]eview of an arbitration award is extremely deferential."  N.Y. City Dist. Council of Carpenters v. Ross Sales & Contracting Inc., No. 14 Civ. 04106(RMB)(HBP), 2015 WL 150923, at *2 (S.D.N.Y. Jan. 5, 2015) (citation omitted). Indeed, "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected."  D.H. Blair & Co., Inc. v.

---

[5] On March 21, 2022, Speedier filed what appears to be an unauthorized sur-reply in connection with the parties' briefing of the signature issue.  See Speedier Reply in Opposition (Mar. 21, 2022), DE #31.  Speedier voluntarily withdrew its submission the next day.  See Letter Withdrawing Reply Declaration (Mar. 22, 2022), DE #32.

Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks and citations omitted).

All that is required for confirmation is a "barely colorable justification for the outcome

reached" in the arbitrators' award.  Id. (citations omitted).  Such deference is particularly

appropriate with respect to foreign arbitration awards: Courts have held that "[j]udicial policy

strongly favors recognition by American courts of foreign arbitral awards." Karen Mar. Ltd.

v. Omar Int'l, Inc., 322 F.Supp.2d 224, 225 (E.D.N.Y. 2004).

     "The New York Convention, as implemented by the Federal Arbitration Act ('FAA'),

empowers the federal courts to enforce foreign arbitration awards upon the petition of any

party to the arbitration within three years of the issuance of the award." Crescendo Mar. Co.

v. Bank of Commc'ns Co. Ltd., 15 Civ. 4481 (JFK), 2016 WL 750351, at *4 (S.D.N.Y. Feb.

22, 2016) (citing 9 U.S.C. §§ 201, 207).  The goal of the New York Convention is "to

encourage the recognition and enforcement of commercial arbitration agreements in

international contracts and to unify the standards by which agreements to arbitrate are observed

and arbitral awards are enforced in the signatory countries." Scherk v. Alberto-Culver Co.,

417 U.S. 506, 520 n.15 (1974) (citation omitted).

     "To enforce a foreign arbitration award, the party seeking recognition and enforcement

need only provide: (a) a duly authenticated original award or an authentic copy of the award,

and (b) an original or certified copy of the agreement to arbitrate." Matter of Arb. Between

State Enter. Rsch.-Indus. Complex "Pavlograd Chem. Plant" & Petroleum & Materials LLC,

CV 18-2510 (ADS) (AKT), 2019 WL 1261783, at *5 (E.D.N.Y. Feb. 12, 2019) (citations

omitted), adopted sub nom. State Enter. Rsch.-Indus. Complex "Pavlograd Chem. Plant" v.

Petroleum & Materials LLC, 2019 WL 1262751 (E.D.N.Y. Mar. 19, 2019).  If these technical

requirements are met, and jurisdiction is proper, "the court *shall* confirm the award unless it finds one of the [seven] grounds for refusal or deferral of recognition or enforcement of the award specified in [Article V of the New York Convention]." 9 U.S.C. § 207 (emphasis added); see Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 19 (2d Cir. 1997) (noting that "the district court's role in reviewing a foreign arbitral award is strictly limited" (citations omitted)).[6]  The party opposing confirmation of a foreign arbitration award bears the "heavy" burden "to prove that one of the[se] seven defenses . . . applies."

---

[6] The seven grounds, which are set forth in Articles V(1) and V(2) of the New York Convention, read as follows:

    (a)  The parties to the agreement [to arbitrate] were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

    (b)  The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

    (c)  The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

    (d)  The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

    (e)  The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

New York Convention art. V(1).  And:

    (a)  The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

    (b)  The recognition or enforcement of the award would be contrary to the public policy of that country.

Id. art. V(2); see Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 405 n.4 (2d Cir. 2009).

Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 90 (2d Cir.

2005) (citations omitted); accord Agility Pub. Warehousing Co. K.S.C., Pro. Cont. Adm'rs,

Inc. v. Supreme Foodservice GmbH, 495 F.App'x 149, 150-51 (2d Cir. 2012).

## II.    Analysis

At the outset, the Court finds that Generali España, in moving for enforcement of the

Arbitration Awards, has complied with the technical requirements under the New York

Convention, and that its Petition is therefore properly before this Court for adjudication.[7]  As

noted supra, a party seeking enforcement of a foreign arbitration award must apply for an

order confirming the award within three years after it is issued.  See 9 U.S.C. § 207.  Here,

the Liability Award and the Costs Award were issued on October 25, 2018 and October 8,

2019, respectively, and Generali España filed its Petition to confirm and enforce these awards

on July 20, 2021—within three years after the first award was issued.  See Petition at 11.  In

addition, Generali España's Petition, as required by Article IV of the New York Convention,

includes a certified copy of the original contract (i.e., the Booking Note), which contains the

relevant Arbitration Clause, as well as certified copies of the aforementioned Arbitration

Awards.  See Booking Note, DE #4-3; Liability Award, DE #4-1; Costs Award, DE #4-2.

"Because the Court finds no infirmity in [Generali España's] moving papers, the Court

declines to refuse enforcement based upon a violation of Article IV of the Convention."

---

[7] The Court has personal jurisdiction over Speedier, as the company is incorporated under the laws of New York and maintains its principal place of business at 149-39 175th Street, Suite 208, Jamaica, New York 11434.  See Petition ¶ 5; Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic, 582 F.3d 393, 397 (2d Cir. 2009) ("Some basis must be shown, whether arising from the respondent's residence, his conduct, his consent, the location of his property or otherwise, to justify his being subject to the [enforcing] court's power." (citation omitted)).

Geotech Lizenz AG v. Evergreen Sys., Inc., 697 F.Supp. 1248, 1252-53 (E.D.N.Y. 1988) (citation omitted).

Furthermore, upon review of the preexisting record, the Court concludes that there is at least "a barely colorable justification" for the Arbitration Awards. The Tribunal's decisions address the issues presented and the arguments of all parties involved and reflect a considered judgment on each such issue. See generally Liability Award, DE #4-1 (25-page decision detailing grounds for Tribunal's liability determination); Costs Award, DE #4-2 (10-page decision examining submitted costs). Finally, as set forth in greater detail below, none of the grounds for non-recognition of the Arbitration Awards under Article V of the New York Convention is applicable here.

### A. Defenses Under the New York Convention

Speedier makes various arguments against enforcement of the Arbitration Awards. As an initial matter, before addressing these arguments on the merits, the Court notes that Speedier's submissions contain no citations to the seven defenses to enforcement available under Article V of the New York Convention, or to any caselaw construing those defenses. See Speedier Opp., DE #28-1; see also Answer. The significant overlap between Speedier's assertions makes it difficult to discern discrete arguments. Compare Answer ¶ 3 with id. ¶ 4 (repeating argument that Speedier never entered into the underlying shipping agreement). Therefore, it is not readily apparent which, if any, of the seven defenses Speedier is advancing in its submissions. Nevertheless, in order to give Speedier the benefit of the doubt, the Court has sought to identify which of the Article V defenses best aligns with Speedier's arguments as presented.

12

### i.      *Article V(1)(a)*

First, Speedier asserts that the Arbitration Awards should not be enforced against it because Speedier was not involved in the underlying shipping transaction and did not sign the Booking Note, thereby rendering that agreement, and its Arbitration Clause, invalid.  <u>See</u> Answer ¶¶ 2, 4; Speedier Opp. ¶¶ 2-4, 6, DE #28-1.  The Court interprets Speedier's argument as invoking the defense to enforcement available under Article V(1)(a)—i.e., challenging the validity of the agreement.  <u>See</u> New York Convention art. V(1)(a).  As a preliminary matter, contrary to Speedier's assertions, "[a] party need not sign an arbitration agreement to be bound if [it] commits [it]self to [the agreement] by actions or conduct." <u>Roller v. Centronics Corp.</u>, No. 87 CIV. 5715 (JFK), 1989 WL 71200, at *2 (S.D.N.Y. June 22, 1989) (citation omitted); <u>see</u> <u>Thomson-CSF, S.A. v. Am. Arb. Ass'n</u>, 64 F.3d 773, 777 (2d Cir. 1995) ("In the absence of a signature, a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate[.]" (citation omitted)); <u>accord</u> <u>Gonzalez v. Toscorp Inc.</u>, No. 97 Civ. 8158(LAP), 1999 WL 595632, at *2 (S.D.N.Y. Aug. 5, 1999).  Indeed, the Second Circuit "has held an agreement to arbitrate can be implied from a party's conduct in the arbitration proceedings."  <u>Parrella v. The Orange Rabbit, Inc.</u>, 20-CV-9923 (RA), 2021 WL 4462809, at *10 (S.D.N.Y. Sept. 29, 2021) (citation omitted), <u>appeal dismissed</u>, 2022 WL 1310736 (2d Cir. Feb. 24, 2022); <u>see</u> <u>Gvozdenovic v. United Airlines, Inc.</u>, 933 F.2d 1100, 1105 (2d Cir. 1991) (flight attendants "manifested a clear intent to arbitrate the dispute" by sending representative to arbitration process).  Thus, "if a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have

13

waived its right to object to the arbitration." Parrella, 2021 WL 4462809, at *10 (internal quotation marks and citations omitted).

Here, Speedier's consent to be represented by Wasa and its counsel during the arbitration would appear to be such conduct manifesting an intent to arbitrate the shipping dispute. See, e.g., id. at *11 n.9; Speedier 3/1/19 Email, DE #26-7 (acknowledging that Wasa's counsel also represented Speedier in connection with the arbitration proceedings); 2017 Email Chain Between Arbitrators and Wasa (docketed on Feb. 6, 2022) at 2, 4, DE #26-6 (Lex Maris law firm of London confirms its representation of both Wasa and Speedier).

In any event, the Tribunal explicitly considered the signature issue and whether Speedier was a party to and liable under the Booking Note.[8] See Liability Award ¶ 35, DE #4-1. Upon evaluating the evidence presented, the Tribunal concluded that Wasa's signature on the Booking Note under Speedier's designation as "Carrier" was sufficient to bind both parties to the terms of the contract, including the Arbitration Clause therein. See id. While the arbitrators did not go into extensive detail in outlining the basis for their determination, an "arbitrator's rationale for an award need not be explained" in order for that award to be confirmed, especially where, as here, the arbitrators set forth the grounds for their decision and their rationale "can be inferred from the facts of the case[.]" D.H. Blair, 462 F.3d at 110 (internal quotation marks and citation omitted); accord Commodities & Mins. Enter., Ltd. v. CVG Ferrominera Orinoco, C.A., 1:19-cv-11654-ALC, 2020 WL 7261111, at *3 (S.D.N.Y.

---

[8] "As the Second Circuit has recognized, under English law courts presume that an arbitration clause applies to all disputes arising out of the contractual relationship between the parties unless the language makes it clear that certain questions were intended to be excluded from the arbitrator's jurisdiction." Crescendo, 2016 WL 750351, at *10 (internal quotation marks and citation omitted). Here, the Arbitration Clause in the Booking Note contains no such carveout; on the contrary, it expressly states that "any dispute arising out of or in connection with this contract or concerning the validity of this arbitration clause shall be referred to arbitration in London." Booking Note ¶ 36, DE #4-3. Thus, the Tribunal properly considered the issue.

Dec. 10, 2020); see Liability Award ¶ 35, DE #4-1 (concluding that Wasa's stamp and signature under the designation for Speedier were made on behalf of Speedier because no "as agents only" qualification was added); see generally Overseas Cosmos, Inc. v NR Vessel Corp., No. 97 CIV. 5898(DC), 1997 WL 757041, at *2-3 (S.D.N.Y. Dec. 8, 1997) (Chin, J.) (court confirms arbitration award, rejecting challenge to validity of agreement to arbitrate, even though agreement was signed by broker rather than petitioner; agreement to arbitrate was nevertheless enforceable under both English and U.S. law), appeal dismissed, 148 F.3d 51 (2d Cir. 1998).

The Court further notes that, given Speedier's correspondence with the arbitrators, Speedier cannot and does not claim that it was completely unaware of the underlying events or the arbitration proceedings.  See 3/1/19 Speedier Email, DE #26-7 (discussing Wasa's representation of Speedier in the arbitration proceedings "with respect to th[e] transaction" for the shipment of the transformer).  In fact, the record reflects that Speedier not only was well aware of the dispute and arbitration, but also discussed the matter with Wasa, see id., with which Speedier had and, it is undisputed, has continued to have, an ongoing professional relationship, see Answer ¶ 1 (confirming that Speedier has conducted business with Wasa); Generali España Brief at 20, DE #25 (citing, *inter alia*, Speedier Shipping U.S. Customs Records (Feb. 6, 2022) at 4-5, DE #26-9)—thereby undermining Speedier's contention that Wasa acted without authority in binding Speedier to the underlying transaction.  Finally, Speedier has offered no concrete evidence substantiating its claim that it was not a party to the underlying shipping agreement.[9]  In light of these considerations, the Court concludes that

---

[9] In support of Speedier's assertion that it was not a party to the underlying transaction, Speedier proffers two declarations, of attorney Ripa and Kasinee Thongprasert, the sole owner of Speedier.  See Declaration of Glenn

15

Speedier has failed to show that the Booking Note and/or Arbitration Clause are invalid and that therefore the Arbitration Awards should be vacated under Article V(1)(a).

> ### ii.    Article V(1)(b)

Speedier further argues that it is not bound by the Tribunal's decision because Speedier did not otherwise agree to or participate in the arbitration.  See Answer ¶ 3; Speedier Opp. ¶¶ 5-6, DE #28-1.  Generously construed, this argument can be categorized as falling within Article V(1)(b), which provides a defense to enforcement where the resisting party is not given proper notice of the arbitration or "was otherwise unable to present [its] case[.]"  New York Convention art. V(1)(b).  "Successful reliance on this provision requires a showing that the arbitration was conducted in violation of this country's standards of due process of law." Jiangsu Changlong Chems., Co., Inc. v. Burlington Bio-Med. & Sci. Corp., 399 F.Supp.2d 165, 168 (E.D.N.Y. 2005) (citation omitted), amended on other grounds, 2006 WL 8439568 (E.D.N.Y. Dec. 6, 2006).  "To comport with due process[,] parties to an arbitration must be given notice reasonably calculated to inform them of the proceedings and *an opportunity* to be heard."  Id. (internal quotation marks and citations omitted) (emphasis added); see Tianjin Port Free Trade Zone Int'l Trade Serv. Co., Ltd. v. Tiancheng Chempharm, Inc. USA, 771 F.App'x 36, 37 (2d Cir. 2019).

---

H. Ripa (Mar. 4, 2022) ("Ripa Decl.") ¶¶ 1-6, DE #28; Declaration of Kasinee Thongprasert (Mar. 4, 2022) ("Thongprasert Decl.") ¶¶ 1-3, DE #28-2.  While counsel's hearsay declaration asserts, among other things, that Speedier "was not a party to [the underlying] transaction[,]" Ripa Decl. ¶ 3, the sworn statement of Speedier's principal focuses on the Booking Note, claiming that Speedier "had no involvement with" *that document* and that an unidentified representative of Wasa acknowledged that Speedier had been listed as carrier without its permission, see Thongprasert Decl. ¶ 2.  These perfunctory statements are insufficient to carry respondent's "heavy burden" to demonstrate a viable defense to enforcement of the Arbitration Awards.  See generally Overseas Cosmos, 1997 WL 757041, at *4.

Once again, this issue—i.e., Speedier's representation and participation in the proceedings—was properly considered and resolved by the Tribunal.  See Liability Award ¶ 16, DE #4-1; Crescendo, 2016 WL 750351, at *10.  The Tribunal concluded that while Speedier was not *directly* involved in the proceedings, Speedier nevertheless participated through Wasa's counsel, the London firm of Lex Maris, which appeared on behalf of both Wasa and Speedier.  See Liability Award ¶ 16, DE #4-1.  The record amply supports the Tribunal's determination: Speedier clearly had notice of the arbitration, see Arbitration Notice, DE #4-5 at 2-3 (notice of commencement of arbitration addressed to both Wasa and Speedier's corporate addresses), and was aware that Wasa was acting on Speedier's behalf, as acknowledged in Mr. Ripa's 2019 email to the arbitrators, see Speedier 3/1/19 Email, DE #26-7 (complaining about the effectiveness of Wasa's counsel's representation of Speedier's interests).  Implicit in the 2019 email is that Speedier agreed to be represented by Wasa's counsel, the Lex Maris firm.  See id.  Speedier cannot now claim that it did not participate in the arbitration proceedings or that it was denied the opportunity to be heard simply because Speedier is dissatisfied with the quality of its legal representation and the unfavorable outcome of the arbitration proceedings.  See Yukos Capital S.A.R.L. v. OAO Samaraneftegaz, 963 F.Supp.2d 289, 296-98 (S.D.N.Y. 2013) (respondent failed to establish lack of notice as a defense to enforcement under Article V(1)(b); having received notice of arbitration and with knowledge that it was being represented in the proceedings by management company, respondent decided not to appear and, when it changed management companies, failed to notify the tribunal of any changes to its choice of representative), aff'd, 592 F.App'x 8 (2d Cir. 2014).  "Any second thoughts about the effectiveness of the representation it chose not

now entitle [Speedier to] revisit that decision." Jiangsu Changlong Chems., 399 F.Supp.2d at 169.

Even assuming *arguendo* that Speedier did not consent to be represented by Wasa's counsel, the fact remains that, having been provided with notice of the arbitration, Speedier chose not to participate directly in the proceedings, or to present the arguments now conveniently advanced after the issuance of the Tribunal's decision. As such, Speedier's present objections are deemed waived. See Am. Nursing Home v. Loc. 144 Hotel, Hosp., Nursing Home & Allied Servs. Union, SEIU, AFL-CIO, No. 89 CIV. 1704 (DNE), 1992 WL 47553, at *5 (S.D.N.Y. Mar. 4, 1992) ("affirmative defenses to arbitration awards are waived when not raised before the arbitrator" (citation omitted)); see also Parrella, 2021 WL 4462809, at *11 ("Having lost before the arbitrator, Parrella cannot now make a new argument to this Court that the arbitrator was never empowered to compel him to arbitrate as a non-signatory."). Speedier also failed to timely move to vacate the award by initiating annulment proceedings in London. See Generali España Brief at 13 n.1, DE #25. Simply put, it cannot be said that Speedier lacked notice of the arbitration proceedings or the opportunity to present its case; Speedier "simply chose not to participate in the arbitration proceedings." Tianjin Port Free Trade Zone Int'l Trade Serv. Co., Ltd. v. Tiancheng Chempharm, Inc. USA, 17-CV-4130 (JS)(AYS), 2018 WL 2436990, at *4 (E.D.N.Y. May 30, 2018), aff'd, 771 F.App'x 36 (2d Cir. 2019). As such, enforcement of the Arbitration Awards is in no way barred by Article V(1)(b).

Nor has Speedier shown, or even alleged, the applicability of any of the remaining grounds for refusal of recognition of the Arbitration Awards under Article V. Nevertheless,

this Court has independently reviewed those other exceptions and agrees with Generali España that none is applicable here.  Accordingly, the Court must confirm and enforce the Arbitration Awards against Speedier.[10]

## CONCLUSION

For the foregoing reasons, the Court grants Generali España's Petition to confirm and enforce the two foreign Arbitration Awards issued in London, England.  Generali España is awarded €545,000.00 in total damages, with 4.5 percent per annum interest, compounded with three monthly rests (intervals) from October 1, 2016 through the entry of judgment; £16,815.00 in arbitration costs as reflected in the Liability Award, with 4.5 percent per annum interest, compounded with three monthly rests from October 25, 2018 through the entry of judgment; and £83,904.58 in further costs (counsel fees and disbursements), as reflected in the Costs Award, with 4.5 percent per annum interest, compounded with three monthly rests from October 8, 2019 through the entry of judgment; plus post-judgment interest pursuant to 28 U.S.C. § 1961.  The aforesaid foreign-currency sums are to be converted to U.S. dollars upon entry of judgment.  The Clerk of the Court is respectfully requested to enter judgment in favor

---

[10] The Petition seeks "[o]ngoing interest as provided by the Tribunal, accruing until the date of payment in full[.]"  Petition, *ad damnum* clause ¶¶ (b)(ii), (iv); see, e.g., Liability Award ¶ 45(C), DE #4-1 (awarding €545,000.00 with interest "from 1 October 2016 to the date of payment"); Costs Award ¶ 25(C) (awarding £83,904.58 with interest "from the date of this Further Award until the date of payment").  However, awards of post-judgment interest are governed by 28 U.S.C. § 1961, which applies to actions to confirm arbitration awards.  See, e.g., Albtelecom SH.A v. UNIFI Commc'ns, Inc., 16 Civ. 9001 (PAE), 2021 WL 1089982, at *5 (S.D.N.Y. Mar. 22, 2021) (citing Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 100-01 (2d Cir. 2004)).  Therefore, the Tribunal's methodology for calculating interest applies solely to pre-judgment interest; post-judgment interest shall be calculated in accordance with section 1961.

The Petition further requests that the Court order "Speedier to pay the costs of these proceedings[.]"  Petition, *ad damnum* clause ¶ (c).  However, Generali España chose not to pursue its request for litigation costs in any of its subsequent submissions, which ask only that the "Awards [be] recognized and enforced[.]"  Pet. Mem. at 5, DE #1-2; Generali España Brief at 20, DE #25; Reply at 10, DE #29.  As Generali España has not presented any argument as to why it is entitled to the costs of litigation, any records substantiating those costs, or even the amount of such costs, the Court denies its request for costs in connection with this proceeding.  See Albtelecom SH.A, 2021 WL 1089982, at *4, *5.

of Generali España and against Speedier, consistent with the Arbitration Awards, in the

foregoing amounts.

**SO ORDERED.**

**Dated:**   **Brooklyn, New York**
           **May 17, 2022**

                              /s/ ***Roanne L. Mann***
                              **ROANNE L. MANN**
                              **UNITED STATES MAGISTRATE JUDGE**